1  Joel E. Elkins (SBN 256020)
   jelkins@weisslawllp.com
2  **WEISSLAW LLP**
   611 Wilshire Blvd., Suite 808
3  Los Angeles, CA 90017
   Telephone: 310/208-2800
4  Facsimile:  310/209-2348

5  *Attorneys for Plaintiff*

6

7

8
                    **UNITED STATES DISTRICT COURT**
9                   **NORTHERN DISTRICT OF CALIFORNIA**

10 JAMES PARSHALL,                         ) Case No.
                                           )
11         Plaintiff,                      )
                                           )
12    vs.                                  )
                                           ) **COMPLAINT FOR**
13 NEOPHOTONICS CORPORATION,               ) **VIOLATIONS OF THE**
   CHARLES J. ABBE, BANDEL L. CARANO,      ) **FEDERAL SECURITIES LAWS**
14 MICHAEL J. SOPHIE, KIMBERLY Y.          )
   CHAINEY, RAJIV RAMASWAMI, IHAB          ) **JURY TRIAL DEMANDED**
15 TARAZI, TIMOTHY S. JENKS, YANBING       )
   LI, and SHERI SAVAGE,                   )
16                                         )
           Defendants.                     )
17

18      Plaintiff James Parshall ("Plaintiff"), on behalf of himself and all others similarly situated,

19 upon information and belief, including an examination and inquiry conducted by and through his

20 counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief,

21 alleges the following for his Complaint:

22                              **NATURE OF THE ACTION**

23      1.     Plaintiff brings this action against NeoPhotonics Corporation ("NeoPhotonics" or the

24 "Company") and the members of NeoPhotonics' Board of Directors (the "Board" or the "Individual

25 Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934

26 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission

27 ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to

28
                                          - 1 -
              COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Lumentum Holdings Inc. ("Lumentum"), through Lumentum's subsidiary Neptune Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On November 4, 2021, NeoPhotonics and Lumentum announced that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, each NeoPhotonics stockholder will receive $16.00 in cash for each share of NeoPhotonics common stock they own.

3.     On December 23, 2021, NeoPhotonics filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) the Company's financial projections and the financial analyses that support the fairness opinion provided by the Company's financial advisor, Union Square Advisors LLC ("Union Square"); and (ii) the background of the Proposed Transaction. Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

4.     The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.     The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who

has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of NeoPhotonics.

9. Defendant NeoPhotonics is a Delaware corporation, with its principal executive offices located at 3081 Zanker Road, San Jose, California 95134. NeoPhotonics' common stock trades on the New York Stock Exchange under the ticker symbol "NPTN."

10. Defendant Charles J. Abbe has served as a director of the Company since 2012.

11. Defendant Bandel L. Carano has served as a director of the Company since 2004.

12. Defendant Michael J. Sophie has served as a director of the Company since 2006.

13. Defendant Kimberly Y. Chainey has served as a director of the Company since 2021.

14. Defendant Rajiv Ramaswami has served as a director of the Company since 2014.

15. Defendant Ihab Tarazi has served as a director of the Company since 2015.

16. Defendant Timothy S. Jenks is Chairman of the Board and has served as President, Chief Executive Officer, and a director of the Company since April 1998.

17. Defendant Yanbing Li has served as a director of the Company since 2019.

18. Defendant Sheri Savage has served as a director of the Company since July 2, 2021.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

20. Relevant non-party Lumentum is a Delaware corporation, with its principal executive offices located at 1001 Ridder Park Drive, San Jose, California 95131. It is an industry leading

provider of optical and photonic products addressing a range of end market applications including Optical Communications and Commercial Lasers for manufacturing, inspection and life science applications. Lumentum's common stock trades on the Nasdaq Global Select Market under the ticker symbol "LITE."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

21.   NeoPhotonics develops, manufactures, and sells optoelectronic products that transmit, receive and switch high-speed digital optical signals for cloud and hyper-scale data center internet content provider and telecom networks. The Company is the world's primary supplier of tunable lasers that emit the ultra-pure light required for the highest speed over distance fiber optic communications links. NeoPhotonics offers high speed products, including transmitter, receiver, and switching products for 400G and optical transmission applications over distances of 2 to 2,000 kilometers; ultra-narrow linewidth tunable lasers that generate ultra-pure wavelength or color for coherent transmission; and integrated coherent receivers that decode the phase and polarization encoded coherent optical signals. The Company also provides pluggable coherent transceivers that combine ultra-narrow linewidth laser with coherent receiver and performance coherent modulator; and 100G products for data center applications. In addition, NeoPhotonics offers multi-cast switching solutions for 100G and above coherent systems; and network products and solutions, such as arrayed waveguide gratings, multiplexers, and filters used in dense wavelength division multiplexing systems. The Company sells its products to network equipment manufacturers through a direct sales force in North America, Europe, and Asia.

22.   On November 4, 2021, NeoPhotonics and Lumentum issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> SAN JOSE, Calif., Nov. 4, 2021 -- Lumentum Holdings Inc. (NASDAQ: LITE) ("Lumentum") and NeoPhotonics Corporation (NYSE: NPTN) ("NeoPhotonics") today announced that they have entered into a definitive agreement under which Lumentum will acquire NeoPhotonics for $16.00 per share in cash, which represents a total equity value of approximately $918 million. The transaction has been unanimously approved by the Boards of Directors of both companies.

The addition of NeoPhotonics expands Lumentum's opportunity in some of the fastest growing areas of the more than $10 billion market for optical components used in cloud and telecom network infrastructure. The integrated company will be better positioned to serve the needs of a global customer base who are increasingly utilizing photonics to accelerate the shift to digital and virtual approaches to work and life, the proliferation of IoT, 5G, and next-generation mobile networks, and the transition to advanced cloud computing architectures. The combination creates a stronger partner for customers, with the ability and intent to invest strongly in innovation and manufacturing capacity.

"With NeoPhotonics, we're making another important investment in better serving our customers and expanding our photonics capabilities at a time when photonics are at the forefront of favorable long-term market trends," said Alan Lowe, Lumentum President and CEO. "At the center of our strategy is a relentless focus on developing a differentiated portfolio with the most innovative products and technology in our industry so that we can help our customers compete and win in their respective markets. Adding NeoPhotonics' differentiated products and technology and innovative R&D team is consistent with this strategy and together, we will better meet the growing need for next generation optical networking solutions."

"We are confident this transaction will make us an even better partner to our customers, while enabling our team to deliver significant, long-term value to our stockholders. We look forward to welcoming NeoPhotonics' talented team of employees to Lumentum," concluded Mr. Lowe.

"Today's announcement is an exciting milestone for NeoPhotonics," said Tim Jenks, NeoPhotonics President, CEO, and Chairman. "The increasing global demand for our ultra-pure light tunable lasers and photonics technologies for speed over distance applications is more apparent than ever, and Lumentum is the ideal partner to serve our customers on a larger scale. Lumentum recognizes the importance of NeoPhotonics' differentiated photonic technology and products, which are well positioned for accelerated growth in the coming years. The combination's complementary product portfolio, increased scale, breadth of customer application knowledge, and R&D capabilities will accelerate innovation, better serve customers, and deliver significant and immediate value to our stockholders. Importantly, this transaction is a testament to the hard work and dedication of our employees. I look forward to working with Lumentum leadership to ensure a smooth transition as we begin an exciting new chapter as one company."

**Compelling Strategic and Financial Benefits**

- **Comprehensive Capabilities for the Significant 400G+ Optical Network Opportunity:** The complementary combination accelerates Lumentum's exposure to and penetration of some of the fastest growing portions of the more than $10 billion market for optical components used in cloud and telecom network infrastructure. Internet, cloud, mobile, and broadband access network capacity requirements continue to grow at an unrelenting pace driven by the digital transformation of work and life, high-bandwidth video, gaming, and other applications. The combined company will have a broader portfolio of next generation products and technologies addressing the market opportunity created by the strong growth in network capacity requirements created by these applications.
- **Positioned to Better Serve Market Leading Customers:** The combined company will comprise a solid financial position and the ability to invest in new

- products, technologies, and manufacturing capabilities, with a broader portfolio of products and technology relevant to global leaders in cloud and communications networks infrastructure. This transaction underscores Lumentum's commitment to the photonics and communications markets, and the combined company will continue to heavily invest in innovation and manufacturing capabilities in order to meet and exceed customers' photonics needs – today and into the future.

- **Accelerated Innovation from Combined R&D and Technology Capabilities Globally:** The combination increases the scale and scope of Lumentum's innovation engine globally. The company will benefit from R&D and manufacturing capabilities globally across Asia, North America, and Europe. With a broader global talent pool, Lumentum will be well positioned to accelerate innovation and collaborate more closely with market and technology-leading customers worldwide.

- **Poised to Capture Attractive New Growth Opportunities:** Photonics will play an increasing role in new approaches to automobiles and delivery vehicles, manufacturing, industrial sensing, safety and security, health care and the life sciences, and addressing climate change. The combined organization will be poised to capture new market growth opportunities created by these trends due to the combined R&D innovation engine and technology base. The combination's breadth of technology and vertical integration, from underlying components and materials to sub-systems and systems, increases the ability to participate in the technology stack of new end market customers increasingly utilizing photonics.

- **Delivers Substantial Run-Rate Synergies and Solid Accretion to Lumentum's Earnings**: There are significant efficiency gains in combining derived from increased scale, reducing redundancies, and leveraging the best capabilities in the combination. The combined company is expected to generate more than $50 million in annual run-rate synergies within 24 months of the closing of the transaction. The transaction is expected to be immediately accretive to the combined company's non-GAAP earnings per share upon closing. The combined company is expected to have a solid balance sheet and strong operating cash flows, creating substantial financial flexibility to pursue continued growth initiatives.

**Transaction Terms, Financing, and Approvals**

The purchase price represents a premium of approximately 39% to NeoPhotonics' closing stock price on November 3, 2021. Lumentum intends to finance the transaction through cash from the combined company's balance sheet.

Related to the transaction, Lumentum will provide up to $50 million in term loans to NeoPhotonics to fund anticipated growth, which may require increased working capital and manufacturing capacity.

The transaction is expected to close in the second half of calendar year 2022, subject to approval by NeoPhotonics' stockholders, receipt of regulatory approvals, and other customary closing conditions.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Advisors

Goldman Sachs & Co. LLC served as the exclusive financial advisor to Lumentum and Wilson Sonsini Goodrich & Rosati, Professional Corporation served as legal advisor. Union Square Advisors LLC served as exclusive financial advisor to NeoPhotonics and Cooley LLP served as legal advisor.

**The Proxy Misleads NeoPhotonics Stockholders by Omitting Material Information**

23. On December 23, 2021, NeoPhotonics filed the materially misleading and incomplete Proxy with the SEC. Designed to convince NeoPhotonics' stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning: (i) the Company's financial projections and the financial analyses that support the fairness opinion provided by the Company's financial advisor, Union Square; and (ii) the background of the Proposed Transaction.

*Material Omissions Concerning the Company's Financial Projections and Union Square's Financial Analyses*

24. The Proxy omits material information regarding the Company's financial projections.

25. The Proxy fails to disclose the line items underlying the Company's (i) Non-GAAP Gross Profit, (ii) Non-GAAP Operating Profit before SBC, (iii) Adjusted EBITDA, (iv) Non-GAAP Operating Profit after SBC, (v) Non-GAAP Net Income, (vi) Non-GAAP Unlevered Net Income, (vii) Unlevered Free Cash Flow, and (viii) Pre-tax Profit for Cash Tax Provision.

26. The Proxy also fails to disclose material information regarding Union Square's financial analyses.

27. The Proxy describes Union Square's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Union Square's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, NeoPhotonics' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Union

Square's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

28. With respect to Union Square's *Selected Publicly Traded Company Analysis*, the Proxy fails to disclose the individual financial multiples and metrics for each of the comparable companies observed by Union Square.

29. With respect to Union Square's *Precedent Transactions Analysis*, the Proxy fails to disclose the individual financial multiples and metrics for each of the transactions observed by Union Square.

30. With respect to Union Square's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 9.3% to 11.3%; (ii) the implied terminal multiples resulting from the analysis; (iii) NeoPhotonics' net cash used in the analysis; and (iv) the fully diluted shares of NeoPhotonics common stock outstanding as of November 1, 2021.

31. With respect to Union Square's *Premiums Paid Analysis*, the Proxy fails to disclose: (i) each of the transactions observed in the analysis; and (ii) the premiums paid in each of the transactions.

32. With respect to Union Square's *Research Analyst Price Targets for NeoPhotonics Corporation*, the Proxy fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

33. Without such undisclosed information, NeoPhotonics stockholders cannot evaluate for themselves whether the financial analyses performed by Union Square were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully

evaluate the extent to which Union Square's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

34. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Financial Projections" and "Opinion of Union Square Advisors LLC."

*Material Omissions Concerning the Background of the Proposed Transaction*

35. The Proxy fails to disclose material information regarding the background of the Proposed Transaction.

36. The Proxy sets forth that in connection with Lumentum's June 24, 2021, updated indication of interest, Lumentum was prepared to agree to certain key provisions. The Proxy fails, however, to disclose the key provisions that Lumentum was prepared to agree to.

37. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Background of the Merger."

38. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

39. Plaintiff repeats all previous allegations as if set forth in full.

40. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

41. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the financial analyses that support the fairness opinion provided by Union Square and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

43. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

44. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

### COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. The Individual Defendants acted as controlling persons of NeoPhotonics within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of NeoPhotonics, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly,

the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

49. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, NeoPhotonics' stockholders will be irreparably harmed.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of NeoPhotonics, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

| | |
|---|---|
| Dated: January 5, 2022 | WEISSLAW LLP<br>Joel E. Elkins<br><br>By: */s/ Joel E. Elkins*<br><br>Joel E. Elkins<br>611 Wilshire Blvd., Suite 808<br>Los Angeles, CA 90017<br>Telephone:  310/208-2800<br>Facsimile:   310/209-2348<br>          -and-<br>Richard A. Acocelli<br>305 Broadway, 7th Floor<br>New York, NY 10007<br>Telephone: 212/682-3025<br>Facsimile:  212/682-3010<br><br>*Attorneys for Plaintiff* |
| **OF COUNSEL:**<br><br>**BRAGAR EAGEL & SQUIRE, P.C.**<br>Alexandra B. Raymond<br>810 Seventh Avenue, Suite 620<br>New York, NY 10019<br>Tel: (646) 860-9158<br>Fax: (212) 214-0506<br>Email: raymond@bespc.com<br><br>*Attorneys for Plaintiff* | |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS